UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KIM JAEHYUN, HYUN WOO HWANGBO, and :
PAUL MITCHELL KIM, :
:
                    Plaintiffs, :
:
        -against- :    **COMPLAINT**
:
JKKL INC. d/b/a PICNIC GARDEN BBQ :
BUFFET, JAMES MIN LEE, and CHUNG KANG :
LEE, :
:
                    Defendants. :
----------------------------------------------------------------X

       Plaintiffs Kim Jaehyun, Hyun Woo Hwangbo, and Paul Mitchell Kim (collectively, "Plaintiffs"), by their attorneys Pechman Law Group PLLC, complaining of Defendants JKKL Inc. d/b/a Picnic Garden BBQ Buffet ("Picnic Garden"), James Min Lee, and Chung Kang Lee (collectively, "Defendants"), allege:

### NATURE OF THE COMPLAINT

       1.    Throughout their employment as servers at Picnic Garden BBQ Buffet, Defendants required Plaintiffs to work up to seventy and a half hours per workweek but failed to pay them applicable minimum wages or overtime pay. Instead, Defendants paid them a day rate of no more than $50 for shifts exceeding twelve hours while unlawfully misappropriating their tips. Defendants also failed to pay Plaintiffs spread-of-hours pay when they worked shifts spanning more than ten hours in a workday, failed to provide accurate wage statements with each payment of wages, and failed to provide adequate wage notices when they were hired or whenever their rates of pay changed. Additionally, Defendants implemented an unlawful tip pool whereby Defendants used customer gratuities to pay the daily wages of its bussers, distributed a significant portion of the gratuities to a restaurant manager, and unlawfully deducted the cost of non-

payment by customers or cash losses from the tip pool.  Further, Plaintiffs were "manual workers" who spent more than 25% of their work time performing duties that were physical in nature, but Defendants unlawfully paid their wages on a bi-weekly basis rather than a weekly basis.

2. Plaintiffs bring this action seeking injunctive and declaratory relief and to recover their unpaid minimum and overtime wages, spread-of-hours pay, misappropriated tips, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the New York Labor Law § 190, *et seq.* ("NYLL"), and the NYLL's Wage Theft Prevention Act, NYLL §§ 195, 198 ("WTPA").

## JURISDICTION

3. This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337 and has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367.

## VENUE

4. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391 because Picnic Garden is located and operated by Defendants in the Eastern District of New York and the acts and omissions giving rise to Plaintiffs' claims occurred in the Eastern District of New York.

## THE PARTIES

**Plaintiff Kim Jaehyun**

5. Kim Jaehyun resides in Queens County, New York.

6. Kim Jaehyun worked for Defendants as a server from approximately January 2017 through January 2023.

**Plaintiff Hyun Woo Hwangbo**

7. Hyun Woo Hwangbo resides in Queens County, New York.

8. Hyun Woo Hwangbo worked for Defendants as a server from approximately September 16, 2019 through March 18, 2023.

**Plaintiff Paul Mitchell Kim**

9. Paul Mitchell Kim resides in Queens County, New York.

10. Paul Mitchell Kim worked for Defendants as a server from approximately October 1, 2020 through October 2022.

**JKKL Inc. d/b/a Picnic Garden BBQ Buffet**

11. Defendant JKKL Inc. is a New York Corporation that owns, operates, and does business as Picnic Garden BBQ Buffet, a Korean barbecue-style restaurant located at 154-05 Northern Boulevard, Flushing, New York 11354.

12. Defendant JKKL Inc. was formed on October 26, 2020, when it assumed control and operation of Picnic Garden from Picnic Garden BBQ Buffet Inc., the entity that had previously owned and operated the restaurant.

13. JKKL Inc. is a successor-in-interest to Picnic Garden BBQ Buffet Inc.

14. In all material respects, JKKL Inc. has continued to operate the same Korean barbecue-style restaurant at the same location as Picnic Garden BBQ Buffet Inc.

15. JKKL Inc. continued to engage in substantially the same work under the same ownership and management, and provided the same service to its customers (i.e., Korean barbecue-style restaurant), as Picnic Garden BBQ Buffet Inc.

16. JKKL Inc. continued to employ the same employees, including Plaintiffs, in the same positions and with substantially the same job duties and pay provisions as Picnic Garden BBQ Buffet Inc.

17. The Individual Defendants were involved in Picnic Garden's operations and management throughout Plaintiffs' employment, regardless of the corporate entity used to operate Picnic Garden.

18. Throughout Plaintiffs' employment, Picnic Garden employed eleven or more employees.

19. Picnic Garden is an "enterprise engaged in commerce" within the meaning of the FLSA.

20. Picnic Garden has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

21. In the three years preceding the filing of this Complaint, JKKL Inc. has had an annual gross volume of sales in excess of $500,000.

**Defendant James Min Lee**

22. Defendant James Min Lee ("James") is a principal and owner of JKKL Inc.

23. James is listed as the principal of JKKL Inc. d/b/a Picnic Garden BBQ Buffet on its New York State Liquor License.

24. Upon information and belief, James is the son of Defendant Chung Kang Lee.

25. Throughout Plaintiffs' employment, James has maintained power and authority over the employment terms and conditions of JKKL Inc. employees, including Plaintiffs.

26. Throughout Plaintiffs' employment, James visited Picnic Garden to meet with Picnic Garden's General Manager Kyung Hyun Kim to discuss the restaurant's operations. Throughout Plaintiffs' employment, James exercised power and authority through Kyung Hyun Kim at Picnic Garden.

27. James exercised sufficient control over JKKL Inc.'s operations and Plaintiffs' employment to be considered their employer under the FLSA and NYLL.

**Defendant Chung Kang Lee**

28. Defendant Chung Kang Lee ("Chung") is a principal and owner of JKKL Inc.

29. As a principal and owner of JKKL Inc., Chung has power and authority over the employment terms and conditions of JKKL Inc. employees, including Plaintiffs, and the operations of Picnic Garden.

30. For example, on March 16, 2020, Chung came to the restaurant and ordered General Manager Kyung Hyun Kim to have the staff begin shutting down operations following Governor Cuomo's executive order mandating restaurant closures in light of the COVID-19 crisis.

31. Chung had and exercised authority to hire and fire employees. For example, Chung interviewed and hired Jaehyun.

32. Additionally, after Jaehyun left his employment at Picnic Garden, Chung called him approximately three days after his last day and attempted to re-hire him to work at the restaurant.

33. Chung was regularly present at Picnic Garden approximately two to three times a week. While at the premises, he directly supervised Picnic Garden servers, including Plaintiffs, in person or by monitoring the restaurant's surveillance cameras from the office of the restaurant. Chung provided corrections and instructions to staff by using handheld radios to communicate with Kyung Hyun Kim or Plaintiff Jaehyun, who then passed on his directives to the rest of the servers.

34. Chung established and exercised authority regarding the pay practices at Picnic Garden.

35. For example, when Hwangbo was hired, he was paid a higher day rate than what had originally been communicated to him. When Picnic Garden was made aware of the error a week after he was hired, Hwangbo was told by Kyung Hyun Kim that Chung acknowledged the error but gave the authorization to continue paying him the higher rate.

36. Chung exercised sufficient control over JKKL Inc.'s operations and Plaintiffs' employment to be considered their employer under the FLSA and NYLL.

## FACTUAL ALLEGATIONS

37. Throughout Plaintiffs' employment, Defendants unlawfully retained customer gratuities and failed to distribute customer gratuities in their entirety to servers, including Plaintiffs.

38. Throughout Plaintiffs' employment, at the end of each workday after all customer gratuities were pooled together, Defendants deducted the daily wages for bussers from the gratuities and paid the bussers' wages using these customer gratuities. Defendants further deducted a daily "utility" fee from the gratuities that ranged from $3 from Monday through Thursday, $10 on Friday and Sunday, and $20 on Saturday. The remainder of the tips were then evenly split between the servers and General Manager Kyung Hyun Kim.

39. Throughout Plaintiffs' employment, if a customer failed to pay their tab or if a server forgot to bill for a beverage or other item, Defendants deducted the cost of the customer's non-payment or loss from the tip pool.

40. Kyung Hyun Kim's primary responsibilities at Picnic Garden include general supervision of the restaurant and waitstaff, setting schedules, disciplining servers, and otherwise acting in a managerial capacity. He performed only *de minimis* table service for customers.

6

41. Throughout Plaintiffs' employment, Defendants paid Plaintiffs below the minimum wage rates established by the FLSA and the NYLL.

42. Defendants paid servers, including Plaintiffs, a fixed day rate in cash every two weeks, and gratuities were distributed in cash daily.

43. Upon receipt of their wages, servers, including Plaintiffs, were required by Defendants to return $1,400 in cash back to Defendants every two weeks. Defendants then paid the servers $1,090 via Zelle, a digital payment service. The difference between the amount given to Picnic Garden and the amount paid back via Zelle was allegedly a result of applicable payroll withholdings.

44. Defendants did not provide Plaintiffs with wage statements for the Zelle payments, but the payments were reflected as wages on annual IRS W2 Forms issued to Plaintiffs by Defendants.

45. The day rates paid to Plaintiffs did not fluctuate with the quality or quantity of work performed each workday.

46. Defendants did not provide Plaintiffs with wage notices when they were hired or when their rates of pay changed.

47. Defendants did not provide Plaintiffs with wage statements with each payment of their wages accurately reflecting, *inter alia*, their total hours worked, overtime hours worked, hourly rates paid, and overtime rates paid.

**Kim Jaehyun Hours Worked and Wages Paid**

48. From approximately January 2017 to May 2017, Jaehyun regularly worked five days per week, including Friday, Saturday, and Sunday. His daily schedule was either 10:30 a.m. to 12:00 a.m. or 11:30 a.m. to 1:00 a.m., with an hour-long break on weekdays not including Friday. As a result, he worked approximately sixty-five and a half hours per workweek.

7

49.     From approximately May 2017 to November 2019, Jaehyun regularly worked five days per week, including Friday, Saturday, and Sunday. His daily schedule was 10:30 a.m. to 1:00 a.m., with an hour-long break on weekdays not including Friday. As a result, he worked approximately seventy and a half hours per workweek.

50.     From November 2019 to March 15, 2020, Jaehyun regularly worked five days per week, including Friday, Saturday, and Sunday. His daily schedule was from either 10:30 a.m. to 12:00 a.m. or from 11:30 a.m. to 1:00 a.m., with an hour-long break on weekdays not including Friday. As a result, he worked approximately sixty-five and a half hours per workweek.

51.     Following a COVID-19-related closure of the restaurant from approximately March 16, 2020, to October 1, 2020, Jaehyun returned to work on a reduced four-day schedule of 10:30 a.m. to 10:00 p.m. each day, totaling approximately forty-six hours per workweek. Jaehyun worked the reduced schedule until approximately April 2021, when Jaehyun resumed his pre-pandemic schedule of approximately sixty-five and a half hours per workweek until the end of his employment.

52.     From approximately January 2017 to May 2017, Defendants paid Jaehyun a day rate of $30.00.

53.     From approximately May 2017 through approximately May 2018, Defendants paid Jaehyun a day rate of $45.00.

54.     From June 2018 to the end of his employment, Defendants paid Jaehyun a day rate of $50.00.

**Hyun Woo Hwangbo's Hours Worked and Wages Paid**

55.     From approximately September 26, 2019 through March 15, 2020, Hwangbo regularly worked five days per week, including Friday, Saturday, and Sunday. His daily schedule was either 10:30 a.m. to 12:00 a.m. or 11:30 a.m. to 1:00 a.m., with an hour-long

break on weekdays not including Friday. As a result, he worked approximately sixty-five and a half hours per workweek.

56. Following a COVID-19-related closure from March 16, 2020 to October 1, 2020, Hwangbo returned to work on a reduced five-day schedule of 10:30 a.m. to 10:00 p.m. each day, for approximately fifty-seven hours per workweek. Hwangbo worked the reduced schedule until approximately April 2021, when Hwangbo resumed working his pre-pandemic schedule of approximately sixty-five and a half hours per workweek until the end of his employment.

57. From September 26, 2019 through September 2022, Defendants paid Hwangbo a day rate of $35.00.

58. From October 2022 through to the end of his employment, Defendants paid Hwangbo a day rate of $45.00.

**Paul Mitchell Kim's Hours Worked and Wages Paid**

59. From October 1, 2020 to February 2021, Kim worked four to five days a week from 10:30 a.m. to 10:00 p.m. each day, for approximately forty-six to fifty-seven and a half hours per workweek.

60. From February 2021 to approximately April 2021, Kim worked a five-day schedule, 10:30 a.m. to 10:00 p.m. each day, for approximately fifty-seven and a half hours per workweek.

61. From approximately April 2021 through October 2022, Kim regularly worked five days per week, including Friday, Saturday, and Sunday. His daily schedule was either 10:30 a.m. to 12:00 a.m. or 11:30 a.m. to 1:00 a.m., with an hour-long break on weekdays not including Friday. As a result, he worked approximately sixty-five and a half hours per workweek.

62. Throughout his employment, Defendants paid Kim a day rate of $35.00.

9

## FIRST CLAIM
### (FLSA – Unpaid Minimum Wages)

63. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

64. The FLSA requires that employers pay employees a minimum wage for all hours worked weekly up to forty.

65. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs.

66. The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, and the supporting federal regulations, apply to Defendants.

67. Defendants failed to pay Plaintiffs the minimum wages to which they were entitled under the FLSA.

68. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' compensation.

69. As a result of Defendants' willful violations of the FLSA, Plaintiffs suffered damages and are entitled to recover their unpaid minimum wages, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs of this action.

## SECOND CLAIM
### (NYLL – Unpaid Minimum Wages)

70. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

71. The NYLL and its supporting New York State Department of Labor ("NYDOL") regulations require employers to pay employees at least the minimum wage rate for the first forty hours worked in a workweek. See N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 146.

72. Defendants are employers within the meaning of the NYLL §§ 190, 651(6), and 652, and NYDOL regulations, including but not limited to 12 NYCRR § 146 et seq.

73. Defendants employed Plaintiffs within the meaning of the NYLL.

74. As a result of Defendants' wage payment practices, they failed to pay Plaintiffs the minimum wages to which they were entitled under the NYLL and its supporting NYDOL regulations.

75. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs minimum wages.

76. As a result of Defendants' willful violations of the NYLL, Plaintiffs suffered damages and are entitled to recover their unpaid minimum wages, liquidated damages, pre- and post-judgment interest, and reasonable attorney's fees and costs.

## THIRD CLAIM
### (FLSA – Unpaid Overtime Wages)

77. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

78. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs.

79. Defendants were required to pay Plaintiffs overtime wages at a rate of one and one-half (1 ½) times their regular hourly rates, not to be less than the applicable minimum wage, for all hours worked in excess of forty hours per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, et seq.

80. Defendants failed to pay Plaintiffs the overtime wages to which they were entitled to under the FLSA.

81. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs overtime wages.

82. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to Plaintiffs' compensation.

83. As a result of Defendants' willful violations of the FLSA, Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

## FOURTH CLAIM
### (NYLL – Unpaid Overtime Wages)

84. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

85. Under the NYLL and supporting NYDOL regulations, Defendants were required to pay Plaintiffs one and one-half (1 ½) times their regular hourly wage rate for all hours worked over forty per workweek.

86. Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the NYLL.

87. Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs overtime wages.

88. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

## FIFTH CLAIM
### (FLSA – Misappropriation of Tips)

89. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

90. 29 U.S.C. § 203(m)(2)(B) prohibits employers from retaining tips received by their employees for any purpose, including allowing managers or supervisors to keep any portion of employees' tips.

91. Defendants willfully violated the FLSA by unlawfully retaining a portion of the gratuities that should have been remitted to Plaintiffs.

92. As a result of the Defendants' violations, the Plaintiffs have suffered damages and are entitled to recover their misappropriated tips, liquidated damages, attorneys' fees and costs, and pre-judgment and post-judgment interest.

## SIXTH CLAIM
### (NYLL – Misappropriation of Tips)

93. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

94. NYLL § 196-d and regulations issued thereunder, *see* N.Y.C.R.R., tit. 12, §§ 146-2.14, 146-2.15 prohibit employers from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee.

95. Defendants willfully violated these provisions by unlawfully retaining a portion of the gratuities that should have been remitted to Plaintiffs.

96. As a result of Defendants' willful violation of NYLL § 196-d and regulations issued thereunder, Plaintiffs suffered damages and are entitled to recover their misappropriated tips, liquidated damages, attorneys' fees and costs, and pre-judgment and post-judgment interest.

## SEVENTH CLAIM
### (NYLL – Unpaid Spread-of-Hours Pay)

97. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

98. Defendants willfully failed to pay Plaintiffs additional compensation of one hour of pay at the statutory minimum wage rate for each day during which Plaintiffs' shifts spread over more than ten hours.

99. By Defendants' failure to pay Plaintiffs spread-of-hours pay, Defendants willfully violated Section 650 *et seq.*, of the NYLL and the supporting NYDOL regulations, including, but not limited to, 12 N.Y.C.R.R § 146-1.6.

13

100. As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover unpaid spread-of-hours pay, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

### EIGHTH CLAIM
### (NYLL § 191 – Frequency of Payments)

101. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

102. In 1967, the New York State legislature amended NYLL § 198 to impose "stronger sanctions" in the form of liquidated damages to compel employers to comply with the requirements of Article 6 of the NYLL, including the frequency of payment requirements set forth in Section 191 of the NYLL. These "stronger sanctions" serve to "compensate the employee for the loss of the use of money to which he [or she] was entitled," as is the case with late wage payments, because an employee loses "the use of money [when] he or she is never paid, partially paid, or paid late." Vega v. CM & Assocs. Constr. Mgt., LLC, 175 A.D.3d 1144, 1146 n. 2 (1st Dep't 2019) (citation omitted). This concept is not new. For decades, the United States Supreme Court has likewise interpreted the FLSA, 29 U.S.C. § 201 et seq., on which the NYLL is based, as entitling employees to recover liquidated damages "regardless of whether an employee has been paid wages owed before the commencement of the action." Id. (quoting Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707 (1945)).

103. Defendants violated Section 191 of the NYLL by paying the Plaintiffs their wages on a bi-weekly basis. As "manual workers" within the meaning of the NYLL, they should have been paid "weekly and not later than seven calendar days after the end of the week the[ir] wages are earned." N.Y. Lab. L. § 191(1)(a)(i).

104. Throughout their employment, Plaintiffs spent more than 25% of their working time performing physical tasks.

14

105. Plaintiffs were "manual workers" within the meaning of NYLL § 191(1)(a).

106. Defendants should have paid Plaintiffs on a weekly basis, "and not later than seven calendar days after the end of the week in which the wages were earned." N.Y. Lab. L. § 191(1)(a).

107. Because Defendants failed to pay Plaintiffs on a weekly basis, in addition to other recovery available to them as set forth in this Complaint, they are entitled to recover liquidated damages equal to their wages paid a week late in every bi-weekly pay period.

## NINTH CLAIM
### (NYLL – Unlawful Deductions)

108. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

109. Defendants maintained a policy and practice whereby they took unlawful deductions from Plaintiffs wages or required payment by separate transaction for customer walkouts and cashier shortages.

110. The deductions made were not authorized in writing by Plaintiffs and were not for the benefit of Plaintiffs.

111. Through their knowing and intentional efforts to permit unauthorized deductions by separate transaction or directly from the wages of Plaintiffs, Defendants have willfully violated NYLL, Article 6, § 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

112. Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants the amounts unlawfully deducted, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

### TENTH CLAIM
### (NYLL WTPA – Failure to Provide Wage Notices)

113. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

114. The NYLL's WTPA requires employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

115. In violation of NYLL § 195(1), Defendants failed to furnish Plaintiffs at the time of hiring or whenever their rate(s) of pay changed with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

116. As a result of Defendants' violations of NYLL § 195(1), Plaintiffs are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1–b).

### ELEVENTH CLAIM
### (NYLL – Failure to Provide Wage Statements)

117. Plaintiffs repeat and incorporate all foregoing paragraphs by reference.

118. The NYLL's WTPA requires employers to provide employees with an accurate wage statement with each payment of wages.

119. Defendants failed to furnish Plaintiffs, with each payment of wages, with a statement accurately listing: rate or rates of pay and basis thereof, whether paid by the

16

hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

120. As a result of Defendants' violations of NYLL § 195(3), Plaintiffs are entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

a. declaring that Defendants violated the minimum wage provisions of the FLSA, the NYLL, and supporting regulations;

b. declaring that Defendants violated the overtime wage provisions of the FLSA, the NYLL, and supporting regulations;

c. declaring that Defendants violated the tip provisions of the FLSA, the NYLL, and supporting regulations;

d. declaring that Defendants violated the spread-of-hours pay provisions of the NYLL and NYDOL regulations;

e. declaring that Defendants violated the frequency of payments provision of the NYLL;

f. declaring that Defendants unlawfully deducted amounts from Plaintiffs' wages in violation of the NYLL;

g. declaring that Defendants violated the wage notice and wage statement provisions of the NYLL's WTPA;

h. declaring that Defendants' violations of the FLSA and the NYLL were willful;

      i.      enjoining future violations of the FLSA and NYLL by Defendants;

      j.      awarding Plaintiffs damages for unpaid minimum wages;

      k.      awarding Plaintiffs damages for unpaid overtime wages;

      l.      awarding Plaintiffs damages for misappropriated tips;

      m.      awarding Plaintiffs damages for unpaid spread-of-hours pay;

      n.      awarding Plaintiffs liquidated damages as a result of Defendants failure to pay wages on a weekly basis in violation of the NYLL;

      o.      awarding Plaintiffs unlawfully deducted wages;

      p.      awarding Plaintiffs liquidated damages pursuant to the FLSA and NYLL;

      q.      awarding Plaintiffs statutory damages as a result of Defendants' failure to furnish Plaintiffs with wage notices and accurate wage statements as required by the NYLL's WTPA;

      r.      awarding Plaintiffs pre- and post-judgment interest under the NYLL;

      s.      awarding Plaintiffs reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

      t.      awarding such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: New York, New York
       May 17, 2023

PECHMAN LAW GROUP PLLC

By: _____
Louis Pechman
Christian Mercado
488 Madison Avenue, 17th Floor
New York, New York 10022
Tel.: (212) 583-9500
pechman@pechmanlaw.com
mercado@pechmanlaw.com
*Attorneys for Plaintiffs*